UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joshua A. Gardner, | Case No. 16-cv-03999-JNE-KMM |
| Plaintiff, | |
| v. | |
| State of Minnesota; Minnesota Department of Human Services; Minnesota Sex Offender Program; and Brian Ninneman, Randy Gordon, Troy Doe, and J. Doe, *all in their individual and official capacities*, | ORDER AND REPORT AND RECOMMENDATION |
| Defendants. | |

Zorislav R. Leyderman, The Law Office of Zorislav R. Leyderman, counsel for plaintiff

Bradley Richard Hutter, Minnesota Attorney General's Office, counsel for defendants

Joshua A. Gardner is a patient who is involuntarily civilly committed to the Minnesota Sex Offender Program ("MSOP"). Mr. Gardner brings this action under 42 U.S.C. § 1983, alleging that the defendants violated several of his constitutional rights when they subjected him to a strip-search after an incident at the MSOP facility in February of 2016.

On January 15, 2019, this Court recommended that the defendants' motion to dismiss the complaint be granted because: several defendants were entitled to sovereign immunity; the complaint failed to state a substantive or procedural due process claim; two individual defendants were entitled to qualified immunity; and an official-capacity claim for prospective injunctive relief for an alleged violation of Mr. Gardner's Fourth Amendment rights was asserted against improper defendants. [R&R at 25–26, ECF No. 27.] The Court further concluded that Mr. Gardner should be given leave to replead his Fourth Amendment official-capacity claim for prospective injunctive relief by identifying a proper defendant. [*Id.* at 26.] The District Court adopted the report and recommendation and instructed Mr. Gardner to file a motion to amend the complaint if he wished to replead that official-capacity claim. [Order (Mar. 7, 2019), ECF No. 30.)

1

Mr. Gardner filed a Motion to Amend the Complaint, which is now before the Court. [ECF No. 31.] The defendants argue that leave to amend should be denied as futile because: (1) the issue presented by his proposed new claim has already been fully litigated and decided against Mr. Gardner in *Karsjens v. Piper*, 336 F. Supp. 3d 974 (D. Minn. 2018); and (2) even if the claim isn't precluded, the Proposed Amended Complaint cannot survive a motion to dismiss for failure to state a claim. For the reasons that follow, Mr. Gardner's motion to amend is denied. In addition, given the absence of any viable claims, the Court recommends that this action be dismissed.

I.  Background

Mr. Gardner's Proposed Amended Complaint mostly includes the same factual allegations that he pled in his original Complaint. [*Compare* Compl., ECF No. 1, *with* Proposed Am. Compl., ECF No. 33.] Those underlying facts are recounted in detail in the Court's January 15, 2019 Report and Recommendation, and will not be repeated fully here. Nevertheless, to summarize the relevant allegations, on February 18, 2016, Mr. Gardner was a patient at the MSOP facility in Moose Lake, Minnesota. He was standing near two other MSOP patients who had a brief physical encounter that did not involve a weapon and resulted in no injuries. Although Mr. Gardner did not participate in the altercation, he was detained while MSOP staff members investigated his possible involvement. MSOP staff took him to the facility's High Security Area ("HSA") to question him. Once in the HSA, MSOP staff members told him that he would be subjected to a videotaped strip-search procedure.

Because Mr. Gardner had been sexually abused as a child, which included being forced by a family remember to remove his clothing while being video recorded, he pleaded with MSOP staff members not to go through with the unclothed visual body search ("UVBS"). He asked staff members to review video surveillance recordings first, insisting that they would show he was not involved in the incident involving the other patients. Mr. Gardner's requests were denied and he was brought into a room where he was forced to remove his clothing and was observed by MSOP staff. Afterward, MSOP staff reviewed the surveillance footage, which confirmed that Mr. Gardner had not been involved in the incident.

Based on these incidents, Mr. Gardner seeks leave to amend his Complaint to assert an official-capacity claim for prospective injunctive relief against putative defendants Tony Lourey and Nancy A. Johnston. [Proposed Am. Compl. ¶¶ 6–7.] Mr. Lourey is the Commissioner of the Minnesota Department of Human Services, and Ms. Johnston is the Executive Director of MSOP. [*Id.*] Mr. Gardner claims that "MSOP maintains a custom/practice which permits unnecessary video-recorded strip searches of MSOP patients without justification and without a reasonable investigation." [*Id.*

2

¶ 20.] He asserts that "MSOP maintains a custom of placing MSOP clients into HSA and strip searching all such clients prior to making a determination as to whether the client will be housed in HSA." [*Id.*] Commissioner Lourey and Director Johnston are able to implement and modify MSOP policies and procedures and are aware of the allegedly unlawful custom/practice of strip-searching MSOP clients. [*Id.* ¶¶ 21–22.] However, Mr. Gardner claims that they have failed to take any steps to train MSOP staff regarding the Fourth Amendment's requirements and have demonstrated deliberate indifference to patients' Fourth Amendment rights. [*Id.* ¶ 22.] Mr. Gardner seeks an order requiring Commissioner Lourey and Director Johnston to terminate the allegedly unconstitutional custom and to implement new policies and training that prohibit and discourage unjustified strip searches of MSOP clients. [*Id.*, Prayer for Relief, ¶ b.]

II.  *Karsjens* Litigation And Procedural History

As noted above, in their opposition to the motion to amend the defendants point to a relatively recent decision in a case involving MSOP patients' challenge to searches conducted at MSOP. When Mr. Gardner filed this case, *Karsjens v. Jesson*, a class action lawsuit, had been pending in this District for several years. *Karsjens* involved a class of all persons civilly committed at MSOP, including Mr. Gardner. *Karsjens v. Jesson*, No. 11-cv-3659 (DWF/JJK), Doc. No. 1 (D. Minn. Dec. 21, 2011) (Complaint); *see also id.*, Doc. No. 203 at 11 (D. Minn. July 24, 2012) (Order certifying a class of all patients currently civilly committed to MSOP). The plaintiffs in *Karsjens* raised several constitutional claims under § 1983, including challenges to various policies and practices at the MSOP facility. In particular, on October 28, 2014, the class plaintiffs filed a Third Amended Complaint alleging, among other things, violations of their constitutional rights to be free from unreasonable searches and seizures. *Karsjens*, No. 11-cv-3659, Doc. No. 635 (D. Minn. Oct. 28, 2014) (Third Am. Compl. ¶ 1) (hereafter "*Karsjens* TAC").

In the Third Amended Complaint, the *Karsjens* plaintiffs specifically alleged they were "subject to unwarranted ... unclothed body searches ... without reasonable suspicion being established." *Karsjens* TAC ¶ 156. Further, they claimed that "Plaintiffs and Class members are now subject to strip searches upon entry to the HSA, regardless of the incident that led to being placed in the HSA," and that a refusal to remove clothing would result in forcible cutting off of an individual's clothing and physical inspection of the groin area and buttocks. *Id.* ¶ 157. The *Karsjens* class alleged the MSOP defendants violated their Fourth Amendment rights "through their search policies, procedures and practices." *Id.* ¶ 318.

Before United States District Judge Donovan W. Frank addressed the Fourth Amendment claims in *Karsjens*, he found that the MSOP was unconstitutional on its face

3

and as applied. *Karsjens v. Piper* ("*Karsjens I*"), 845 F.3d 394, 402–03 (8th Cir. 2017) (describing Judge Frank's order). The *Karsjens* defendants appealed that ruling to the Eighth Circuit, which reversed and remanded the case to the district court for further proceedings on the remaining claims. *Id.* at 411.

Several months after the Eighth Circuit's January 3, 2017 decision in *Karsjens I*, and while the *Karsjens* case was pending on remand, Chief Judge John R. Tunheim entered an Order staying all pending and future civil rights cases brought by individuals civilly committed at MSOP. [Stay Order (June 30, 2017), ECF No. 24.] This case was among those that were stayed. At the time the stay order was entered, the parties in this case had already completed briefing on a motion to dismiss, and the Court held a hearing on the motion, but had not issued a decision. [*See* ECF Nos. 14, 17, 19, and 23.]

After *Karsjens* was remanded, the defendants sought summary judgment on the remaining class claims, including that they "have conducted unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution...." *Karjens v. Piper* ("*Karsjens II*"), 336 F. Supp. 3d 974, 978 (D. Minn. 2018). Judge Frank granted summary judgment to the defendants on all the class plaintiffs' Fourth Amendment claims. *Id.* at 994–96. The parties' arguments specifically addressed MSOP's "unclothed visual body search policy." *Id.* at 995. Although Judge Frank did not explicitly mention the aspect of the search policy at issue in this case in his ruling, he determined "that Defendants are entitled to summary judgment on Plaintiffs' classwide challenge to the MSOP's policies implicating the Fourth Amendment." *Id.* at 996. However, Judge Frank noted that the conclusions regarding the viability of the Fourth Amendment claims were "not meant to foreclose committed individuals at MSOP from advancing individual search and seizure claims in separate litigation." *Id.* at 996 n.14.

Judge Frank's *Karsjens II* decision was issued on August 23, 2018. The stay order in this case was lifted on October 22, 2018. [Order (Oct. 22, 2018), ECF No. 26.] On January 15, 2019, this Court issued a report and recommendation regarding the motion to dismiss based on briefing that had been completed before the *Karsjens II* decision was filed. [ECF No. 27.] As noted above, the undersigned concluded that although his then-existing claims should be dismissed, but also found that Mr. Gardner's Complaint stated a claim for violation of his Fourth Amendment rights and that he should be given leave to replead an official-capacity claim for prospective injunctive relief. The District Court dismissed Mr. Gardner's claims on March 7, 2019, and ordered him to file any motion to amend the complaint within 21 days. [Order (Mar. 7, 2019), ECF No. 30.] In compliance with that Order, Mr. Gardner filed the motion to amend at issue here. [ECF No. 31.]

4

### III. Legal Standards

Except where amendment of a pleading is permitted as a matter of course, a party may only amend a complaint with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a)(2). Leave should be given freely when justice so requires. *Id.* However, leave to amend may be denied in several circumstances: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Only the futility standard is implicated in this case. A proposed amendment is futile and leave to amend should be denied when the amended complaint could not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018).

On a motion to dismiss under Rule 12(b)(6), courts review the complaint to determine whether it contains sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the factual content permits the court to draw a reasonable inference that the defendant is liable for misconduct. *Id.* The Court does not accept as true wholly conclusory statements or legal conclusions drawn from the facts. *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). In resolving such a motion, courts look only at the allegations in the complaint and do not consider matters "outside the pleadings." *See Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014).

### IV. "Standing" to Oppose Amendment

Before turning to the merits of the motion to amend, the Court first addresses a procedural argument raised by Mr. Gardner. He asserts that original defendants in this litigation do not have "standing" to raise a futility argument. [Pl.'s Mem. at 2–3, ECF No. 32.] He notes that neither Commissioner Lourey nor Director Johnson have been served and that the original defendants have all been dismissed. As a result, he claims that the Court should not engage with the futility challenge raised by the defendants and he should be granted leave to amend. [*See id.*] The defendants argue that Mr. Gardner's position "is without merit" and contend that a current party may raise a futility challenge on behalf of prospective defendants especially where they "'have a close legal relationship ... and it appears likely that all of the defendants would be represented by the same attorneys.'" [Defs.' Mem. at 5 (quoting *Agri star Meat & Poultry, LLC v. Moriah Capital, L.P.*, No. C10-1019, 2011 WL 1743712, at *7 (N.D. Iowa May 6, 2011)), ECF No. 36.]

No controlling Eighth Circuit decision resolves the parties' disagreement on this point. And there is some support in non-binding decisions for Mr. Gardner's position. *See Custom Pak Brokerage, LLC v. Dandrea Produce, Inc.*, No. 13-cv-5592 (NLH/AMD), 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) ("[C]urrent parties only possess standing to challenge an amended pleading directed to proposed new parties on the basis of undue delay and/or prejudice."). However, under the circumstances of this case, the Court finds more persuasive the cases that allow the original parties to oppose amendment on futility grounds even where the proposed amendment is directed at prospective defendants. *See Agri Star*, 2011 WL 1743712, at *6 ("While the legal authority on this issue appears to be limited, the cases support a view that a current defendant may assert futility on behalf of a prospective defendant."); *id.* (citing *Seelye v. Fisher*, No. 06-cv-2848 (RHK/RLE), 2007 WL 951604 (D. Minn. Mar. 29, 2007)); *see also Worster-Sims v. Tropicana-Entertainment, Inc.*, 46 F. Supp. 3d 513, 516–17 (D.N.J. 2014) (concluding that it was appropriate to consider a futility challenge raised by a current party on behalf of a prospective party).

Following the cases that allow original parties to raise futility of amendment that is directed at prospective parties has a practical appeal here. Commissioner Lourey and Director Johnston are closely aligned with the original defendants. For example, Lourey is the head of the Minnesota Department of Health and Human Services and Johnston oversees the operations of the Minnesota Sex Offender Program, which is where both Ninneman and Gordon worked and allegedly violated Mr. Gardner's Fourth Amendment rights. Moreover, the original defendants have been represented by the Minnesota Attorney General's office, which would also represent Commissioner Lourey and Director Johnston if they were served with the Proposed Amended Complaint. [Defs.' Mem. at 6.] Finally, were the Court to ignore the defendants' opposition to Mr. Gardner's proposed amendment at this stage, construe the motion to amend as unopposed, and permit the amendment, the same issues that are before the Court now would only reappear once Commissioner Lourey and Director Johnston were served. They would almost certainly file a motion to dismiss the amended complaint under Rule 12(b)(6) on the same basis they have opposed the motion to amend. To disregard the defendants' futility arguments now only to have them raised again at a later date after additional work by all the lawyers involved would not help "to secure the just, speedy, and inexpensive determination of" this action. Fed. R. Civ. P. 1. For these reasons, the Court will consider the arguments raised in opposition to the motion to amend.

V.     Issue Preclusion

The defendants' chief argument is that Mr. Gardner's official-capacity claim that MSOP officials have a custom or practice of conducting strip searches in violation of the

Fourth Amendment is barred by issue preclusion.[1] They assert that although Mr. Gardner claims that MSOP maintains such a custom, his allegations show that he is actually challenging MSOP's UVBS policy that was found to be reasonable in *Karsjens II*. Based on the Proposed Amended Complaint and the law governing issue preclusion, the Court denies Mr. Gardner's request for leave to amend because his proposed Fourth Amendment claim is barred by the judgment in *Karsjens II*.

### *Legal Standard*

In a federal-question case like this one, the Court applies federal common law to determine the preclusive effect of a judgment. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "'Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.'" *Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).

To determine whether this preclusion doctrine bars litigation of an issue, the Court considers five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Id.* (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)). The Court finds that all five elements of issue preclusion are satisfied in this case and concludes that Mr. Gardner's proposed amendment is futile.

### *Same Party*

First, Mr. Gardner is the party sought to be precluded in this, the second suit, and he was also a party in the *Karsjens* class action. Mr. Gardner was a member of the *Karsjens* class, which included all patients civilly committed to the MSOP's Moose Lake facility. As a member of the class, Mr. Garnder is bound by the decision in *Karsjens II*.

---

[1] Though issue preclusion is an affirmative defense, it may be raised in a motion to dismiss for failure to state a claim when the defense is "'apparent on the face of the complaint.'" *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012) (quoting *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008)).

*Whipple v. Edwards*, No. 13-cv-2861 (JRT/HB), 2019 WL 1324862, at *5 (D. Minn. Mar. 25, 2019) (concluding that the first element of issue preclusion was satisfied in a second lawsuit brought by a member of the *Karsjens* class because "'a judgment in a properly entertained class action is binding on class members in any subsequent litigation'") (quoting *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 874 (1984)).

*Same Issue*

With respect to the second element, Mr. Gardner asserts that the issue he seeks to litigate through his Proposed Amended Complaint here is different from the issue that was resolved in *Karsjens II*. He argues that in *Karsjens*, the class plaintiffs only raised a challenge to the UVBS policy when an MSOP patient is placed in the HSA, whereas his amendment seeks to litigate the constitutionality of MSOP's custom or practice of placing clients into HSA and strip searching them prior to making a determination as to whether the client will be housed in the HSA. [*See* Pl.'s Mem. at 3–4; Proposed Am. Compl. ¶ 20.]

Mr. Gardner's attempted distinction is not persuasive for at least two reasons. First, the *Karsjens* plaintiffs did not only litigate the issue of MSOP's *written policy* regarding strip searches upon placement in the HSA. They also alleged that MSOP's strip-search *practices* were unconstitutional. *Karsjens* TAC ¶ 318 (alleging that the MSOP defendants violated class members' Fourth Amendment rights "through their search policies, procedures and practices"). Second, and perhaps more importantly, the custom or practice that Mr. Gardner attempts to differentiate is in fact indistinguishable from MSOP's written UVBS policy. In this case, Mr. Gardner claims his Fourth Amendment rights were violated pursuant to a custom or practice that allowed him to be taken to the HSA without a prior determination that he belonged there, which then made him subject to a strip search. This is, in fact, exactly what happens pursuant to MSOP's HSA policy and the policy regarding searches of clients. *Karsjens II*, ECF No. 725-1, Ex. 16 (MSOP High Security Policy 301.087, ¶ B.1; *Karsjens II*, ECF No. 725-1, Ex. 10, ¶ D.1(b); [*See* Boese Decl., Ex. 2 at 73 (characterizing the HSA policy as requiring a strip search of any MSOP patient upon entry to the HSA), ECF No. 37; *id.*, Ex. 2 at 140 (same); *id.*, Ex. 3 at 34 (same).] In other words, what Mr. Gardner alleges happened to him by virtue of an unwritten custom or practice is precisely what is provided for in written MSOP policy.

Mr. Gardner's proposed amendment raises the issue of the constitutionality of the defendants' strip-search or UVBS practices upon the placement of MSOP patients in the HSA. This is the same issue that was involved in the *Karsjens* class action. As noted above, the class plaintiffs in *Karsjens* not only generally raised Fourth Amendment claims challenging the search practices and policies at MSOP, but they specifically

8

raised issues regarding unclothed body searches. They alleged in the Third Amended Complaint that they were "subject to unwarranted ... unclothed body searches ... without reasonable suspicion being established," and specifically alleged that they are "subject to strip searches upon entry to the HSA, regardless of the incident that led to being placed in the HSA." *Karsjens* TAC ¶ 156–57. *See Whipple*, 2019 WL 1324862 (finding the second element of issue preclusion was satisfied in a case in which an MSOP patient alleged that he was subject to a strip search upon his arrival at the HSA pursuant to an unconstitutional practice). Because the issue in this case is identical to that litigated in *Karsjens*, the Court finds the second element of issue preclusion is satisfied.

### *Actually Litigated*

Third, the Court finds that the issue the defendants want to preclude Mr. Gardner from litigating here was actually litigated in *Karsjens*. The District Court in *Karsjens II* explained that MSOP's UVBS policy was at issue, noted the defendants' argument that the UVBS policy "survived constitutional challenges in prior cases," and that the plaintiffs took the position that "unclothed visual body searches are not conducted based on any consideration of individual risk." 336 F. Supp. 3d at 995. Judge Frank determined that the *Karsjens* defendants were entitled to summary judgment on their Fourth Amendment challenge to MSOP's search policies. *Id.* at 996. This decision followed extensive discovery, including voluminous document production, numerous depositions, interrogatories, and requests for admission. [*See* Defs.' Mem. at 12.] During that discovery, the *Karsjens* plaintiffs specifically identified the policy governing strip searches in the HSA as violating their Fourth Amendment rights. [*Id.* at 13 (citing portions of the *Karsjens* plaintiffs' responses to the defendants' interrogatories which directly addressed the constitutionality of the strip search policy).] As recently observed, "[t]here is no credible argument that the constitutionality of the search policies was not at issue in *Karsjens*." *Whipple*, 2019 WL 1324862, at *5 (concluding that the third element of issue preclusion was satisfied in an MSOP patient's post-*Karsjens* challenge to the strip-search policy).

### *Remaining Elements*

The remaining elements of issue preclusion are also satisfied here, and Mr. Gardner makes no argument to the contrary. Judgment was entered on August 25, 2018 in favor of the defendants on Count X (encompassing the class plaintiffs' Fourth Amendment claim) in *Karsjens* following the summary judgment order. [Boese Decl., Ex. 4.] The class plaintiffs did not appeal the summary judgment decision with respect to the Fourth Amendment claim. [Boese Decl., Ex. 5 (limiting the appeal of the *Karsjens II* decision to the District Court's dismissal of Counts III, V, VI, and VII).] However, for purposes of issue preclusion, even if the *Karsjens* plaintiffs had appealed

the dismissal of their Fourth Amendment claims, there would still be a valid, final judgment precluding litigation of that issue here. *Whipple*, 2019 WL 1324862, at *6 ("[E]ven if [the issue of the constitutionality of the MSOP search policies] had been appealed, the Court would still hold that a valid, final judgment was reached, since 'the pendency of an appeal does not suspend operation of an otherwise final judgment ... as collateral estoppel.'") (quoting *In re Ewing*, 852 F.2d 1057, 1060 (8th Cir. 1988)).

Finally, the resolution of the Fourth Amendment claims in *Karsjens II* was based upon Judge Frank's conclusion that MSOP's search policies did not violate the Fourth Amendment. Indeed, "it is the only reason Judge Frank dismissed the Fourth Amendment claim." *Whipple*, 2019 WL 1324862, at *6. For this reason, the Court concludes that the determination of the Fourth Amendment issue in *Karsjens* was essential to the judgment.

### *Conclusion*

Because all five elements of issue preclusion are met, the Court concludes that the judgment in the *Karsjens* case precludes Mr. Gardner from litigating the constitutionality of MSOP's policy, custom, or practice of conducting unclothed visual body searches, or strip searches, whenever a patient is brought to the HSA. Accordingly, his Proposed Amended Complaint cannot survive a motion to dismiss and his motion to amend is denied for futility. Because the Court has denied leave to amend based on issue preclusion and all of Mr. Gardner's other claims in this case have previously been dismissed, the Court further recommends that this action be dismissed with prejudice.

During oral argument on Mr. Gardner's motion to amend, the Court and counsel for the parties discussed whether the conclusion in *Karsjens II* is inconsistent with the undersigned's earlier conclusion that Mr. Gardner had adequately stated a claim that the search in this case violated his Fourth Amendment rights. [*See* R&R (Jan. 15, 2019) at 13–18, ECF No. 27.] The Court acknowledges the tension between its earlier determination and the conclusion reached here that Mr. Gardner's reframed Fourth Amendment claim should be dismissed due to the preclusive effect of *Karsjens II*.[2]

---

[2] The potential conflict is likely due to issues of timing and decisions made by the defendants about where best to expend resources. Briefing on the motion to dismiss, which was addressed in the January 15, 2019 Report and Recommendation was completed well before the decision in *Karsjens II* was ever reached. After the stay in this matter was lifted, neither party asked the Court to provide additional briefing about the possible preclusive effect of that decision on aspects of Mr. Gardner's claim at the time, and the undersigned did not request supplemental briefing. After the Report and

(*footnote continued on following page*)

10

Ultimately, however, the Court need not resolve the conflict to determine that the resolution of the Fourth Amendment issue concerning MSOP's strip-search policy in *Karsjens* precludes the Fourth Amendment claim Mr. Gardner seeks to assert in his Proposed Amended Complaint.

## VI. Order and Recommendation

Based on the foregoing, **IT IS HEREBY ORDERED THAT** Mr. Gardner's Motion to Amend the Complaint **[ECF No. 31]** is **DENIED**. Further, **IT IS HEREBY RECOMMENDED THAT** this action be dismissed with prejudice.

Date: April 26, 2019
*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.

---

Recommendation was issued, the defendants did not object to the portion of the ruling finding that the original Complaint stated a plausible claim of a Fourth Amendment violation because, as explained by counsel at the hearing, the defendants had essentially prevailed on every other issue raised in the motion to dismiss and obtained a recommendation of dismissal. The absence of any objection to the Report and Recommendation also failed to highlight the potential question of issue preclusion for the District Court.